SO ORDERED: June 08, 2011.



_____
**Frank J. Otte
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| MELISSA BETH KONDRITZ, | ) | Case No. 10-12630-FJO-7 |
| | ) | |
| _____ | ) | |
| MELISSA BETH KONDRITZ, | ) | Adversary Proc. No. 10-50623 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| THE UNIVERSITY OF PHOENIX, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ON THE UNIVERSITY OF PHOENIX, INC.'S CROSS-MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on the Motion for Summary Judgment and supporting documents filed in this matter on November 12, 2010 by Plaintiff, Melissa Beth Kondritz, and the Cross-Motion for Summary Judgment and supporting documents filed in this matter on January 17, 2011 by Defendant, The University of Phoenix, Inc.("UoPx")  A hearing on the Motion for Summary Judgment and Cross-Motion for Summary Judgment was held on March 2, 2011, and each party was represented by counsel at that hearing.  The Court now makes its

findings and conclusions pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

### FINDINGS OF FACT

1. UoPX is one of the largest private universities in North America with over 400,000 students offering classes either online or at over 200 locations across the country. (Affidavit of Mark A. Foster ("Foster Affidavit")[1], ¶ 5.)

2. UoPX has an online campus mailing address of 3157 E. Elwood Street, Phoenix, Arizona 85034 ("Campus Mailing Address"). (Foster Affidavit, ¶ 5.)

3. Due to its size, the financial operations of UoPX are managed with an automated system known as Oracle®. (Foster Affidavit, ¶ 5; Affidavit of Lynn Pritchett ("Pritchett Affidavit")[2], ¶ 5; Affidavit of Wayne Bolen ("Bolen Affidavit")[3], ¶ 5). The Oracle® system automatically generates and issues letters to students regarding their accounts depending upon how the account is coded – *i.e.*, a "delinquent" code or a "collections" code. (Bolen Affidavit, ¶ 6.)

4. UoPX has a Financial Services Department with Finance Counselors responsible for monitoring student accounts and working with students on their account balances and payment options. (Foster Affidavit, ¶ 4.) Once a Finance Counselor codes a particular student's account as "delinquent", the Oracle® system automatically issues and generates delinquent letters to that student from the Financial Services Department until the code is changed, the

---

[1] Exhibit 1 to UoPX's Designation of Evidence in Support of its Cross-Motion for Summary Judgment filed in this action on January 17, 2011, as Docket No. 20.
[2] Exhibit 2 to UoPX's Designation of Evidence in Support of its Cross-Motion for Summary Judgment filed in this action on January 17, 2011, as Docket No. 20.
[3] Exhibit 3 to UoPX's Designation of Evidence in Support of its Cross-Motion for Summary Judgment filed in this action on January 17, 2011, as Docket No. 20.

account is paid in full or the account is written off. (Id. at ¶ 8.)

5. If the student's account is not paid, the Financial Services Department has the ability to code the account in the Oracle® system for "collections". (Foster Affidavit, ¶ 13.) This code results in the account being automatically transferred to the Apollo Group Corporate Collection Center ("CCC"). (Id. at 13.) CCC is an affiliate of UoPX. (Pritchett Affidavit, ¶ 2.)

6. CCC serves as a liaison between UoPX and collection agencies. (Pritchett Affidavit, ¶ 4.) A code of "collections" in the Oracle® system means that the system will automatically generate and issue an "initial" letter and a "final" letter to the student from CCC. (Id. at ¶¶ 8, 9.) Once the Oracle® system is manually notified that the final letter from CCC has been issued on a particular account, the system holds the account for fourteen (14) days pending payment from the student. (Id. at ¶ 6.) If payment in full is not received, the account is pooled with other similar delinquent accounts and forwarded to a collection agency once a certain volume is reached. (Id.) Students are notified by CCC in the "initial" and "final" collection letters to make payments to P.O. Box 29887, Phoenix Arizona, 85038-9887, which is a lockbox maintained with Wells Fargo Bank ("Lockbox Address"). (Id. at ¶ 15, Exhibits A and B.)

7. CCC is also responsible for reviewing incoming bankruptcy notices that are then documented in the Oracle® system. (Pritchett Affidavit, ¶ 4.) CCC receives between 500 and 700 bankruptcy notices or other bankruptcy filings each week involving UoPX students. (Id. at ¶ 6.) Upon the receipt of a bankruptcy notice or a bankruptcy case number for a particular student, CCC either confirms that the student's account is coded with a "bankruptcy" code or manually codes the account with a "bankruptcy" code. (Id.) Once a student's account is coded with a "bankruptcy" code, all collection activity through the Oracle® system or otherwise immediately stops and the student's account is written off. (Id.)

3

8. On July 6, 2008, the Debtor applied for admission to the UoPX's online program for a "Master of Business Administration" and was enrolled into the program. (Foster Affidavit, ¶¶ 6, 7.)

9. The Debtor fell behind on her payments due to UoPX in May of 2010 resulting in a past due balance of $570.00. (Foster Affidavit, ¶ 8.) After contacting the Debtor by telephone regarding her account without payment, her Finance Counselor, Mark A. Foster, coded her account in the Oracle® system as "delinquent". (Id.)

10. The "delinquent" coding resulted in the Oracle® system automatically generating and issuing letters to the Debtor regarding her past due account on May 10, May 18 and May 26 of 2010. (Bolen Affidavit, ¶ 7, Exhibits A through C.) These letters included the Debtor's account number, the phone number for the Financial Services Department and the Campus Mailing Address. (Id.)

11. On June 8, 2010, the Debtor and Mr. Foster entered into an agreement whereby she agreed to make payments of $150.00 every two weeks until her account was paid. (Foster Affidavit, ¶ 9.) On June 27, 2010, the Debtor made a payment of $250.00 on her past due balance leaving a new balance on her account of $320.00. (Foster Affidavit, ¶ 10.)

12. Because her account still had a "delinquent" code, the Oracle® system automatically generated and issued a letter to the Debtor regarding her past due account on July 2, 2010. (Bolen Affidavit, ¶ 7, Exhibit D.) This letter also included the Debtor's account number, the phone number for the Financial Services Department and the Campus Mailing Address. (Id.)

13. The Debtor made no further payments on her account with UoPX. (Foster Affidavit, ¶ 11.)

14. After attempting to contact the Debtor by telephone on July 9 and July 13, 2010 with no response and checking her account for payment on July 22, 2010, Mr. Foster recommended to his manager that the Debtor's account be coded in the Oracle® system for "collections." (Foster Affidavit, ¶ 12.)

15. The Debtor's account was then coded in the Oracle® system for "collections" and transferred by Oracle® to CCC on July 24, 2010. (Foster Affidavit, ¶ 13; Pritchett Affidavit, ¶ 7.)

16. On the same day, a system-generated initial letter was issued by Oracle® to the Debtor from CCC. (Pritchett Affidavit, ¶ 8, Exhibit A.)

17. The Debtor filed her voluntary petition on August 20, 2010. The Debtor sent notice of her bankruptcy filing to the Lockbox Address. (Exhibit A to Debtor's Motion for Summary Judgment.)

18. On September 22, 2010, a system-generated final letter was issued by Oracle® to the Debtor from CCC. (Pritchett Affidavit, ¶ 9, Exhibit B.)

19. On October 7, 2010, counsel for the Debtor delivered a stay violation letter to the Lockbox Address. (Exhibit D to Debtor's Motion for Summary Judgment.)

20. Because payment was not received within fourteen (14) days of sending the final letter, the Debtor's account was automatically transferred with other delinquent accounts to Reliant Capital Solutions, LLC ("Reliant") on October 12, 2010. (Pritchett Affidavit, ¶¶ 10,11.)

21. On October 12, 2010, Reliant delivered a demand letter for $320.00 to the Debtor. (Exhibit E to Debtor's Motion for Summary Judgment.)

22. On October 19, 2010, counsel for the Debtor delivered a second stay violation letter to the Lockbox Address. (Exhibit F to Debtor's Motion for Summary Judgment.)

23. On October 22, 2010 (Friday), Reliant returned the Debtor's account to CCC with a bankruptcy code on her account. (Pritchett Affidavit, ¶ 12.) Lynn Pritchett of CCC searched the Oracle® system and did not find that the Debtor's account had a "bankruptcy" code or bankruptcy case number. (Id.) On October 25, 2010 (Monday), Ms. Pritchett contacted Reliant regarding the Debtor's bankruptcy filing. (Id.) Reliant verbally informed Ms. Pritchett of the Debtor's bankruptcy filing and provided her with the bankruptcy case number. (Id.) Ms. Pritchett immediately coded the Debtor's account in the Oracle® system with a "bankruptcy" code and the balance was written off. (Id.)

24. Prior to October 25, 2010, neither Ms. Pritchett nor CCC had any knowledge that the Debtor had filed a bankruptcy case. (Pritchett Affidavit, ¶ 13.) As of the date of the filing of the Cross-Motion for Summary Judgment, neither Ms. Pritchett nor CCC had been provided with a copy of the bankruptcy notice delivered to the Lockbox Address or the letters delivered by counsel for the Debtor to the Lockbox Address. (Pritchett Affidavit, ¶ 16.)

25. Due to a time delay in the Oracle® system, a system-generated letter was issued to the Debtor on October 27, 2010 by the Financial Services Department. (Pritchett Affidavit, ¶ 14; Bolen Affidavit, ¶ 7, Exhibit E.) This letter was automated and no action – other than the coding placed on the Debtor's account prior to her bankruptcy filing – was taken by any individual to deliver this letter. (Id.)

### CONCLUSIONS OF LAW

1. Bankruptcy Code section 362(a)(6) provides that the filing of a bankruptcy petition operates as a stay of an act to collect a claim against a debtor that arose before the commencement of the case. Furthermore, Bankruptcy Code section 362(k)(1) states that an

individual injured by any willful violation of a stay shall recover actual damages, including costs and attorneys' fees and, in appropriate circumstances, punitive damages.

2.  A plaintiff seeking to recover damages under Bankruptcy Code section 362(k)(1) for willful stay violations must prove by a preponderance of the evidence that:

(a)  A bankruptcy petition was filed;

(b)  The aggrieved debtor is an "individual";

(c)  The creditor had notice of the petition;

(d)  The creditor's actions were willful and violated the stay; and

(e)  The debtor is entitled to a form of relief provided by Section 362(k).

*In re Ralph*, 2010 Bankr. LEXIS 2097 (Bankr. S.D. Ind. June 23, 2010).

3.  The Debtor filed her voluntary bankruptcy petition on August 20, 2010. There is no dispute that the Debtor caused notice of her bankruptcy petition to be delivered to the Lockbox Address rather than the Campus Mailing Address.

4.  Bankruptcy Code section 342(a) requires that notices be "appropriate." Furthermore, Section 342(c)(2)(A) provides:

> If, within the 90 days before the commencement of a voluntary case, a creditor supplies the debtor in at least 2 communications sent to the debtor with the current account number of the debtor and the address at which such creditor requests to receive correspondence, then any notice required by this title to be sent by the debtor to such creditor shall be sent to such address and shall include such account number.

Pursuant to Section 342(g)(1), "[n]otice provided to a creditor by the debtor or the court other than in accordance with this section (excluding this subsection) <u>shall not be effective notice</u> until such notice is brought to the attention of such creditor." The notice provided by the Debtor of her bankruptcy petition was not effective notice.

5.     Ninety days before the bankruptcy filing – on May 26, 2010 and July 2, 2010 – the Oracle® system automatically generated and issued letters to the Debtor from the Financial Services Department regarding the Debtor's past due account. (Bolen Affidavit, ¶ 7, Exhibits C and D.) These letters: (a) were under the name of the Finance Counselor, Mr. Foster, or his manager, (b) requested that the Debtor "please contact" the Financial Services Department, (c) included the Debtor's account number in the upper right-hand corner, and (d) provided the Campus Mailing Address at the bottom of the page as well as a telephone number. (Id.) Not only did the Debtor receive correspondence from Mr. Foster, she had conversations with him regarding her account and entered into a payment plan with him in June of 2010. The Debtor was well-aware of Mr. Foster's contact information and the location of the Campus Mailing Address when she filed her petition.

6.     The creditor's letters complied with Section 342(c)(2)(A) of the Bankruptcy Code. Therefore, the Debtor's delivery of notice of her bankruptcy filing to the Lockbox Address was not effective notice under Section 342(g) of the Bankruptcy Code.

7.     The fact that the Debtor received a single piece of correspondence from CCC on or about July 24, 2010 with the Lockbox Address before the bankruptcy filing does not change this analysis. The July 24, 2010 letter clearly asks the Debtor to either "send your check for $320.00 to the address below" (*i.e.*, the Lockbox Address) or "*call* our department to discuss possible arrangements." (Pritchett Affidavit, ¶ 8, Exhibits A.; Exhibit A to Plaintiff's Response in Opposition to Defendant's Cross Motion for Summary Judgment and Brief in Support [*Docket No. 25*].) There is a toll free phone number listed at the bottom of the page. (Id.) It is clear from the plain language of the

letter that the Lockbox Address was a payment address, nothing more.

8. The notice was also not appropriate under the general requirement of 342(a).

9. Although notice to a post office box <u>might</u> be appropriate when no other addresses are available, the Debtor knew about the Campus Mailing Address. By the time she filed her bankruptcy petition, at least four letters had been delivered to her from Mr. Foster or the Financial Services Department with the Campus Mailing Address located at the bottom of the page. (Bolen Affidavit, ¶ 7, Exhibits A through D.)

10. Debtor was also enrolled in the online program inferring a familiarity with the UoPX website. The Campus Mailing Address is readily available at the UoPX website – www.phoenix.edu.

11. For the same reasons as stated above, the letters delivered to the Lockbox Address by counsel for the Debtor on October 7, 2010 and October 19, 2010 were not appropriate notice of the Debtor's bankruptcy filing. (Plaintiff's Brief, pp. 3-4, Exhibits D and F).

12  The *Harvey v. United Technologies*, 388 B.R. 440 (Bankr. D. Maine 2008) case relied upon by the Debtor is distinguishable and not relevant. First, in *Harvey*, the creditor in that case argued that appointing a registered agent was a designation of a person responsible to receive notices under Section 342(g) of the Bankruptcy Code. Here, UoPX, unlike the creditor in *Harvey*, asserts that its Campus Mailing address – not its registered agent address – was the appropriate notification address under Section 342(a) and 342(c)(2)(A). Second, in *Harvey*, it was undisputed that the debtor in that case had no other address for the creditor other than the payment address. Here, the Debtor had knowledge of the Campus Mailing Address. Finally, in *Harvey*, the creditor

never denied that it received the notices from the Debtor. Here, UoPX denies any receipt of the notices send to the Lockbox Address by the Debtor or her counsel.

13. Because the notice was neither proper under Section 342(c)(2)(A) nor otherwise appropriate under 342(a), it was not effective notice on UoPX until such notice was brought to the attention of UoPX. 11 U.S.C. §342(g)(1).

14. The evidence before this Court shows that the Debtor's bankruptcy filing was not brought to the attention of UoPX until October 25, 2010 when Reliant verbally informed CCC of the bankruptcy filing and case number. (Pritchett Affidavit, ¶ 12.) On that date, CCC immediately coded the Debtor's account in the Oracle® system with a "bankruptcy" code and the balance was written off. (Id.) As of the time of the UoPX's filing of its Cross-Motion for Summary Judgment, CCC had not been provided with a copy of the bankruptcy notice delivered to the Lockbox Address or the stay violation letters delivered by counsel for the Debtor to the Lockbox Address. (Pritchett Affidavit, ¶ 16.)

15. Actions taken without notice or knowledge on the part of a creditor of the commencement or the pendency of the bankruptcy case are merely "technical" and no damages are awarded for such actions. *In re Kline*, 424 B.R. 516, 523 (Bankr. D. New Mexico 2010); *In re Ralph*, 2010 Bankr. LEXIS 2097. Therefore, any actions taken by UoPX and any of its affiliates before October 25, 2010 are merely "technical" violations and are not actionable. UoPx did not have the appropriate or effective notice of the Debtor's bankruptcy filing.

16. The only letter delivered after October 25, 2010 was the October 27, 2010 letter from the Financial Services Department. That letter was <u>automatically</u> generated

and issued by the Oracle® system due to the coding on the Debtor's account. (Pritchett Affidavit, ¶ 14.) No action was taken by an individual to send out the October 27, 2010 letter other than the "delinquent" or "collections" coding placed on the Debtor's account that occurred <u>prior</u> to the Debtor's bankruptcy filing. (Foster Affidavit, ¶¶ 8, 12, 13; Pritchett Affidavit, ¶ 14.)

17. Automated actions are not "willful" actions. See *In re Academy Answering Service, Inc.*, 100 B.R. 327, 330 (N.D. Ohio 1989) (finding that IRS' levy of the debtor's bank account and offset of certain prepetition overpayments by the debtor against its prepetition tax liability was not "willful" because it resulted from a delay by the IRS in reprogramming its computer software to accommodate changes in the law); *In re Richard J. Crispell*, 73 B.R. 375, 379 (Bankr. E.D. MO 1987) (holding that automatic debits made after the bank had notice of the bankruptcy as a result of a responsible officer failing to terminate the "automatic" debit feature of debtor's account did not result in "willful" violations of the bankruptcy stay because they were not deliberate or intentional). Therefore, the Debtor has not proven a claim under 362(k)(1).

18. Furthermore, the Court finds that the September 22, 2010 letter from CCC and the transfer of the Debtor's account to Reliant that resulted in the October 12, 2010 letter were also not willful. First, the September 22, 2010 letter was automatically generated and issued by the Oracle® system due to a "collections" coding placed on the account prior to the August 20, 2010 petition date. (Foster Affidavit, ¶ 12; Pritchett Affidavit, ¶¶ 9, Exhibit B.) Second, once the Oracle® system was manually notified that the "final" letter from CCC had been issued on the Debtor's account, the Debtor's account was automatically transferred with other delinquent accounts to Reliant on

11

October 12, 2010 resulting in the delivery of the Reliant letter. (Pritchett Affidavit, ¶¶ 6, 10, 11; Plaintiff's Brief, Exhibit E.) The failure to terminate the automatic collection feature of the Oracle® system did not result in "willful" violations of the bankruptcy stay because they were not deliberate or intentional. Based upon the foregoing, the Court concludes that UoPX's actions were not willful.

19. The Debtor seeks actual damages, attorneys' fees and punitive damages in her Motion for Summary Judgment. No damages are warranted in this case.

20. The Court has concluded that the Debtor's notice of her bankruptcy filing was not appropriate or effect under Section 342(a) of the Bankruptcy Code and that the actions of UoPX were not willful. Therefore, damages are not appropriate under Section 362(k)(1) of the Bankruptcy Code.

## CONCLUSION

The Court finds that there is no genuine issue of material fact on issues dispositive of this adversary proceeding and that Defendant, The University of Phoenix, Inc. is entitled to judgment as a matter of law in its favor and against the Plaintiff, Melissa Beth Kondritz, as to all claims and counts asserted in her "Complaint Seeking Damages in Core Adversary Proceeding" filed in this action on November 2, 2010. This Court will enter judgment accordingly by separate entry.

###